Citation Nr: 1508814 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 09-08 831 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in 
Roanoke, Virginia


THE ISSUES

1. Entitlement to service connection for a disability of the sinuses.

2. Entitlement to service connection for memory problems as a qualifying chronic disability under 38 C.F.R. § 3.317.

3. Entitlement to service connection for chest pain as a qualifying chronic disability under 38 C.F.R. § 3.317.

4. Entitlement to service connection for pain and numbness of right hand and fingers as a qualifying chronic disability under 38 C.F.R. § 3.317.

5. Entitlement to service connection for pain and numbness of left hand and fingers as a qualifying chronic disability under 38 C.F.R. § 3.317.

6. Entitlement to service connection for fatigue as a qualifying chronic disability under 38 C.F.R. § 3.317.

7. Entitlement to service connection for fibromyalgia as a qualifying chronic disability under 38 C.F.R. § 3.317.


REPRESENTATION

Appellant represented by: Virginia Department of Veterans Services


ATTORNEY FOR THE BOARD

Mary C. Suffoletta, Counsel 


INTRODUCTION

The Veteran served for more than 22 years on active duty from January 1984 to January 2006. 

These matters initially came to the Board of Veterans' Appeals (Board) on appeal from a May 2009 decision of the RO that, in pertinent part, declined to reopen a claim for service connection for a disability of the sinuses on the basis that new and material evidence had not been received; and denied service connection for memory problems, chest pains, pain and numbness of right hand and fingers, pain and numbness of left hand and fingers, fatigue, and fibromyalgia. The Veteran timely appealed. 

Regarding the claim for service connection for a disability of the sinuses, the RO developed this claim as one requiring new and material evidence. However, review of the file reveals that the claim was originally denied in May 2007. In April 2008, additional evidence in the form of VA outpatient clinical records were added to the file, which are in fact new and material evidence referable to the claim for a sinus disability. Accordingly, the May 2007 rating decision did not become final with respect to the sinus claim. See 38 C.F.R. § 3.156(b) (new and material evidence received prior to the expiration of the appeal period ... will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period). The issue before the Board, therefore, is one of entitlement to service connection, rather than whether new and material evidence has been received.
 
In January 2014, the Veteran withdrew his prior request for a Board hearing, in writing.

In May 2014, the Board remanded the matters for additional development. The Board is satisfied there was substantial compliance with its remand orders. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268, 271 (1998). 

In December 2014, VA's Appeals Management Center (AMC) granted service connection for hypertension, which is a substantial grant of the benefit sought. That matter is no longer in appellate status.

The issue of secondary service connection for bilateral cervical radiculopathy has been raised by the record in the July 2014 VA examination, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014). 


FINDINGS OF FACT

1. The Veteran had active service in the Southwest Asia Theater of operations during the Persian Gulf War.

2. The Veteran does not have a current disability of the sinuses that had its onset in active service or is related to his active service.

3. The Veteran does not have an undiagnosed illness, characterized by memory problems.

4. The Veteran does not have an undiagnosed illness, characterized by chest pain.

5. The Veteran does not have an undiagnosed illness, characterized by pain and numbness of both hands and fingers.

6. The Veteran does not have an undiagnosed illness, characterized by fatigue.

7. The Veteran does not have a medically unexplained chronic multisymptom illness, to include fibromyalgia.
 

CONCLUSIONS OF LAW

1. A disability of the sinuses was not incurred or aggravated in service. 38 U.S.C.A. §§ 1110, 1111, 1112, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2014).

2. A disability manifested by memory problems, to include as a disability due to undiagnosed illness, was not incurred or aggravated in service. 38 U.S.C.A. §§ 1110, 1117 (West 2014); 38 C.F.R. §§ 3.303, 3.317 (2014).

3. A disability manifested by chest pain, to include as a disability due to undiagnosed illness, was not incurred or aggravated in service. 38 U.S.C.A. §§ 1110, 1117 (West 2014); 38 C.F.R. §§ 3.303, 3.317 (2014).

4. A disability manifested by pain and numbness of both hands and fingers, to include as a disability due to undiagnosed illness, was not incurred or aggravated in service. 38 U.S.C.A. §§ 1110, 1117 (West 2014); 38 C.F.R. §§ 3.303, 3.317 (2014).

5. A disability manifested by fatigue, to include as a disability due to undiagnosed illness, was not incurred or aggravated in service. 38 U.S.C.A. §§ 1110, 1117 (West 2014); 38 C.F.R. §§ 3.303, 3.317 (2014).

6. A medically unexplained chronic multisymptom illness, to include fibromyalgia, was not incurred or aggravated in service. 38 U.S.C.A. §§ 1110, 1117 (West 2014); 38 C.F.R. §§ 3.303, 3.317 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

VA should notify the Veteran of: (1) the evidence that is needed to substantiate the claim(s); (2) the evidence, if any, to be obtained by VA; and (3) the evidence, if any, to be provided by the claimant. Pelegrini v. Principi, 18 Vet. App. 112 (2004); see also Notice and Assistance Requirements and Technical Correction, 73 Fed. Reg. 23,353 (Apr. 30, 2008) (codified at 38 C.F.R. Part 3).

Through January 2009 and February 2009 letters, the RO notified the Veteran of elements of service connection and the evidence needed to establish each element. These documents served to provide notice of the information and evidence needed to substantiate the claims.

VA's letters notified the Veteran of what evidence he was responsible for obtaining, and what evidence VA would undertake to obtain. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). VA informed him that it would make reasonable efforts to help him get evidence necessary to support his claims, particularly, medical records, if he gave VA enough information about such records so that VA could request them from the person or agency that had them.
 In each letter, the RO specifically notified the Veteran of the process by which initial disability ratings and effective dates are established. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

Defects as to the timeliness of the statutory and regulatory notice are rendered moot because each the Veteran's claims on appeal has been fully developed and re-adjudicated by an agency of original jurisdiction after notice was provided. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

There is no indication that any additional action is needed to comply with the duty to assist the Veteran. The RO or VA's Appeals Management Center (AMC) has obtained copies of the service treatment records and outpatient treatment records, and has arranged for VA examinations in connection with the claims on appeal, reports of which are of record and are adequate. The opinions expressed therein are predicated on a substantial review of the record and consideration of the Veteran's complaints and symptoms. The Veteran has not identified, and the record does not otherwise indicate, any existing pertinent evidence that has not been obtained.

Given these facts, it appears that all available records have been obtained. There is no further assistance that would be reasonably likely to assist the Veteran in substantiating the claims. 38 U.S.C.A. § 5103A(a)(2).

II. Analysis

Service connection is awarded for disability that is the result of a disease or injury in active service. 38 U.S.C.A. §§ 1110, 1131.

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004), citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002); see also Caluza v. Brown, 7 Vet. App. 498 (1995). 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." 38 C.F.R. § 3.303(b). If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. Id. The Federal Circuit has held that section 3.303(b) applies only to those chronic conditions specifically listed in 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Every Veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, and disorders noted at the time of examination, acceptance, and enrollment; or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1111 (West 2014).

The Veteran is competent to testify on factual matters of which he has first-hand knowledge. Washington v. Nicholson, 19 Vet. App. 362 (2005). 

Specific to Persian Gulf War service, service connection may be granted for objective indications of a chronic disability resulting from an illness or combination of illnesses manifested by one or more signs or symptoms, to include neurological signs or symptoms; signs or symptoms involving muscle or joint pain; and signs or symptoms involving fatigue. The chronic disability must have become manifest either during active military, naval, or air service in the Southwest Asia Theater of operations (SWA) during the Persian Gulf War, or to a degree of 10 percent or more disabling not later than December 31, 2016, and must not be attributed to any known clinical disease by history, physical examination, or laboratory tests. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317; see 76 Fed. Reg. 81,834 (Dec. 29, 2011) (interim final rule extending statutory period). 

Compensation shall not be paid under this section, however, if there is affirmative evidence that an undiagnosed illness was not incurred during active military, naval, or air service in SWA during the Persian Gulf War; or if there is affirmative evidence that an undiagnosed illness was caused by a supervening condition or event that occurred between the Veteran's most recent departure from active duty in SWA during the Persian Gulf War, and the onset of the illness; or if there is affirmative evidence that the illness is the result of the Veteran's own willful misconduct or the abuse of alcohol or drugs. 38 C.F.R. 
§ 3.317(c).

A Persian Gulf Veteran is a Veteran who served on active military, naval, or air service in SWA during the Persian Gulf War. 38 U.S.C.A. § 1117(e); 38 C.F.R. § 3.317(d). In this case, the Veteran's DD Form 214 shows service in SWA from December 1990 to May 1991. It also confirms receipt of the Southwest Asia Service Medal. This medal generally indicates service in the area and time period referenced under 38 C.F.R. § 3.317.

The term "chronic disability" was changed to "qualifying chronic disability," and the definition of "qualifying chronic disability" was expanded to include (a) undiagnosed illness, (b) a medically unexplained chronic multi-symptom illness (such as chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome) that is defined by a cluster of signs or symptoms, or (c) any diagnosed illness that the Secretary determines, in regulations, warrants a presumption of service connection. 38 U.S.C.A. § 1117 (West 2014); 38 C.F.R. § 3.317 (2014)).

A. Disability of the Sinuses

The Veteran contends that his sinus problems had their onset in active service.

Diseases of allergic etiology, including sinusitis, may not be disposed of routinely for compensation purposes as constitutional or developmental abnormalities. Service connection must be determined on the evidence as to existence prior to enlistment and, if so existent, a comparative study must be made of its severity at enlistment and subsequently. Increase in the degree of disability during service may not be disposed of routinely as natural progress, nor as due to the inherent nature of the disease. Seasonal and other acute allergic manifestations subsiding on the absence of or removal of the allergen are generally to be regarded as acute diseases, healing without residuals. The determination as to service incurrence or aggravation must be on the whole evidentiary showing. 38 C.F.R. § 3.380 (2014).

Here, service treatment records show that the Veteran was treated for headaches and for sinus problems in 2005. Mild paranasal sinus mucosal disease was noted at the time, and described as likely mucous retention cysts.

Post-service records show that the Veteran subsequently was treated for bilateral mucus retention cyst of the maxillary sinus.

In this case, the Veteran also contends that his disability of the sinuses is secondary to his service-connected tension headaches.

Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). When service connection is established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310(a).

However, VA will not concede that a non-service-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established by medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury. The rating activity will determine the baseline and current levels of severity under the Schedule for Rating Disabilities and determine the extent of aggravation by deducting the baseline level of severity, as well as any increase in severity due to the natural progress of the disease, from the current level. See 38 C.F.R. § 3.310(a), (b), as amended effective October 10, 2006. 

Following the Board's May 2014 remand, the Veteran underwent a VA examination in June 2014 for purposes of determining the nature and etiology of any sinus condition. The examiner reviewed the claims file and noted the Veteran's medical history. The Veteran reported tenderness in the nose, which "hurts to touch," and reported getting sinus headaches. The examiner noted that service connection is in effect for tension headaches. X-rays taken of the paranasal sinuses revealed no evidence of sinus disease or fracture. Based on a review of the record and examination of the Veteran, the examiner opined that there is no currently diagnosed sinus condition. In support of the opinion, the examiner commented that there is no objective evidence or pathology on current examination or imaging study which would support a diagnosis of chronic sinusitis or other chronic sinus condition. Because there is no disability of the sinuses, the examiner found that aggravation is not applicable in this case. 

The June 2014 VA examination report reflects no currently diagnosed sinus condition, and weighs against a finding that the Veteran currently has a disability of the sinuses. 

Here, the competent evidence weighs against a finding that establishes that the Veteran has a disability of the sinuses related to active service.

To the extent the Veteran is claiming that he had sinus problems both during service and after service, he is competent to attest to this. However, the Veteran is not competent to claim that he has a disability of the sinuses as this requires diagnostic testing, and an interpretation of the results by a trained professional. The Veteran is not shown to be an expert in allergic diseases. Here, no disability of the sinuses has been identified. As detailed by the June 2014 examiner, there is no objective evidence or pathology to support a diagnosis of chronic sinusitis or other chronic sinus condition. This clinical evidence is more probative than the Veteran's sense that he has had some sinus problems since active service. In essence, the Veteran's treatment for sinus problems in active service in 2005 is regarded as acute allergic manifestations, healing without residuals. 38 C.F.R. § 3.380 (2014).

The preponderance of the evidence is against a finding that the Veteran currently has a disability of the sinuses. Therefore, there is no basis for a grant of service connection. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Caluza v. Brown, 7 Vet. App. 498, 505 (1995) (recognizing that "[a] service connection claim must be accompanied by evidence which establishes that the claimant currently has the claimed disability"). 

B. Qualifying Chronic Disability under 38 C.F.R. § 3.317

The Veteran contends that service connection for memory problems, chest pain, pain and numbness of right hand and fingers, pain and numbness of left hand and fingers, fatigue, and fibromyalgia is warranted on the basis of his service in the Southwest Asia Theater of operations during the Persian Gulf War.

(1) Memory Problems

Neurological signs or symptoms, to include memory problems, are objective signs of undiagnosed illness. 

On a report of medical history completed by the Veteran at the time of his separation examination in April 2005, he did not report memory loss or other neurological problems. 

Records received from the Richmond Veterans Outreach Center in December 2007 reflect symptoms of post-traumatic stress disorder (PTSD), including decreased short-term memory. A neuropsychological assessment in October 2008 concluded that the Veteran's neurocognitive skills were generally in the average range or higher, and were not indicative of any significant neurocognitive dysfunction.

Following the Board's May 2014 remand, the Veteran underwent a VA examination in June 2014 for purposes of determining the nature and etiology of his memory problems. The Veteran described mild memory loss, such as forgetting names, directions, or recent events. The examiner noted that the Veteran presented with speech, cognitive processing, thought process, and thought content within normal limits. His mood was depressed, and affect was not congruent with content. The Veteran denied suicidal ideation. Records show that the Veteran had undergone a full neuropsychological evaluation in October 2008 due to complaints of memory problems and behavior changes since returning from deployment in Iraq. Results revealed no indication of significant neurocognitive dysfunction, with the exception of possible developmental dyslexia (not memory related). The only tasks falling in the low average range were facial and visual memory tasks, which were not likely clinically significant as they were still within the average range of performance. The Veteran's performance on objective neuropsychological testing was not consistent with his complaints of having memory problems.

Cognitive testing administered in June 2014 revealed no indication of clinically significant memory impairment. The examiner found no evidence for a service-connected condition in the area of memory impairment. The examiner noted that the Veteran had been diagnosed with PTSD, and that difficulty concentrating and memory impairment were symptoms of PTSD; and that such symptoms may be attributed to that diagnosis in their entirety, as there was no current indication of a distinct disability. Here, the Board finds that the Veteran's memory problems have not exhibited symptomatology of a compensable nature at any time post-service to warrant a finding of undiagnosed illness. See 38 C.F.R. § 4.124a, Diagnostic Code 8045 (2014). 

Moreover, the June 2014 examiner attributed the Veteran's memory problems to a known clinical diagnosis. Thus, a disability manifested by memory problems cannot be considered an undiagnosed illness or a qualifying chronic disability for entitlement to service connection based on the Veteran's service in the Persian Gulf. 

(2) Chest Pain

Muscle pain and joint pain, to include chest pain, are objective signs of undiagnosed illness.

On a report of medical history completed by the Veteran at the time of his separation examination in April 2005, he reported pain or pressure in the chest. The April 2005 examiner noted that the Veteran had intermittent chest pain at rest in June 2004; electrocardiogram at the time was normal.

VA records show complaints of chest pain in July 2009, and indicate that the consensus of many physicians in the past was anxiety and nerves. Chest X-rays and electrocardiogram conducted in July 2009 were normal.

The Veteran's private treatment records include findings of atypical chest pain, with a couple of risk factors for coronary artery disease in August 2009. 

In this regard, findings of atypical chest pain both during active service and post-service have been attributed in the past to known clinical diagnoses. Thus, a disability manifested by chest pain at any time cannot be considered an undiagnosed illness or a qualifying chronic disability for entitlement to service connection based on the Veteran's service in the Persian Gulf. 

Following the Board's May 2014 remand, the Veteran underwent a VA examination in June 2014 for purposes of determining the nature and etiology of his chest pain. The Veteran described getting sharp pains in the center of his chest, and indicated that the pain lasted about three days at a time. The Veteran reported that he underwent two treadmill stress tests due to his chest pain, and was told that "the heart was okay." X-rays revealed that the heart was normal in size, and lungs were clear. No acute cardiopulmonary disease was found. The examiner found no objective evidence or pathology which would support a current diagnosis in regard to the Veteran's chest pain.

The first requirement for any service connection claim is the existence of a current disability. Brammer, 3 Vet. App. at 225. In this regard, post-service records fail to reveal any diagnosis for allegations of chest pain. Therefore, absent evidence of current disability, service connection cannot be granted. Id. 

The Board has considered the Veteran's statements regarding chest pain as being among his current disabilities. However, the Board finds the conclusions of the June 2014 VA examiner, which are based on the results of diagnostic testing and supported by rationale, to be more probative than references made by the Veteran. Electrocardiograms conducted in June 2004 and in July 2009 were normal. The June 2014 examiner found no objective evidence or pathology pertaining to chest pain. Hence, a basis for compensation is not established. 

Because there is no evidence of a current undiagnosed illness manifested by chest pain, the weight of the evidence is against the claim; and the doctrine of reasonable doubt is not applicable. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

(3) Pain and Numbness in Both Hands and Fingers

Neurological signs or symptoms, to include pain and numbness in both hands and fingers, are objective signs of undiagnosed illness.

On a report of medical history completed by the Veteran at the time of his separation examination in April 2005, he reported numbness or tingling; the April 2005 examiner noted pain in the interphalangeal joints of both hands.

The report of a December 2005 VA examination includes a diagnosis of bilateral finger pain; no etiology had been established.

Nerve conduction studies and electromyography conducted in October 2007 were within normal limits.

Private treatment records include findings of carpal tunnel syndrome in 2009. Nerve conduction studies then were consistent with mild sensory carpal tunnel syndrome. X-rays taken in June 2009 revealed early arthritis of the proximal interphalangeal joints of the left ring and long fingers.

In February 2010, the Veteran reported pain in his hands, and that he felt his hands were swollen. 

Following the Board's May 2014 remand, the Veteran underwent a VA examination in June 2014 for purposes of determining the nature and etiology of his pain and numbness of both hands and fingers. The Veteran described having a "frostbite" feeling in both hands, indicating fourth and fifth fingers; and stated that he had tingling. He awoke with weakness in his hands, and felt like he could not close his hands. He reportedly felt a diffused pain in his hands when he tried to make a fist, indicating extensor surface; and reported that items fell out of his hands. The examiner noted the Veteran's history of cervical fusion, C3-C4 and C5-C6. X-rays taken of the right and left hands were normal. The examiner found no objective evidence or pathology which would support a diagnosis of a current musculoskeletal hand disorder. 

While sensory examination of the Veteran's hands and fingers in June 2014 was decreased, there was no current diagnosis of a peripheral nerve disorder. The examiner opined that the evidence supported a diagnosis of "bilateral cervical radiculopathy," and reasoned that the Veteran's reported symptoms and findings were attributable to residual bilateral cervical radiculopathy and related to his 
service-connected cervical spine disability.

Here, the June 2014 examiner attributed the Veteran's pain and numbness in both hands and fingers to a known clinical diagnosis. Thus, a disability manifested by pain and numbness in both hands and fingers cannot be considered an undiagnosed illness or a qualifying chronic disability for entitlement to service connection based on the Veteran's service in the Persian Gulf. 

(4) Fatigue

Fatigue is an objective sign of undiagnosed illness.

Following the Board's May 2014 remand, the Veteran underwent a VA examination in June 2014 for purposes of determining the nature and etiology of his fatigue. The Veteran reported feeling tired and that he had trouble walking up a flight of steps. He reported breathing "really hard" whenever he bent down, and reported that he avoided walking distances. The Veteran reportedly began feeling fatigue in 2005. He did not recall anything in particular happening, just that his symptoms began then. He reported having trouble getting to sleep and staying asleep, and reported being diagnosed with sleep apnea. He did not use a CPAP machine nightly because it bothered him and he coughed "a lot." The Veteran reportedly coughed up stomach acid at night, and felt like he was "drowning," and it took him a few minutes to get his breath back. The examiner noted that the Veteran's sleep apnea was inadequately treated, due to the irregular use of a CPAP machine.

The June 2014 examiner opined that there were no objective findings or pathology and no history which would support a diagnosis of chronic fatigue syndrome. In support of the opinion, the June 2014 examiner reasoned that the Veteran's fatigue
complaints were attributable to his service-connected sleep apnea. Here, again, there is no current indication of a distinct disability; and the Board finds that the Veteran's fatigue has not exhibited symptomatology of a compensable nature at any time post-service to warrant a finding of undiagnosed illness. See 38 C.F.R. § 4.88b, Diagnostic Code 6354 (2014). 

Moreover, the June 2014 examiner attributed the Veteran's fatigue to a known clinical diagnosis. Thus, a disability manifested by fatigue cannot be considered an undiagnosed illness or a qualifying chronic disability for entitlement to service connection based on the Veteran's service in the Persian Gulf. 

(5) Fibromyalgia

Fibromyalgia is included as a medically unexplained chronic multisymptom illness under 38 C.F.R. § 3.317(a).

Following the Board's May 2014 remand, the Veteran underwent a VA examination in June 2014 for purposes of determining the nature and etiology of his claimed fibromyalgia. At that time the Veteran reported having pain all over his body and reported having muscle spasms. Specifically, he reported that his "whole back," legs, hands, and feet hurt; and reported that he did not take any pain medication. The examiner noted that a muscle relaxer was shown on his medication listing (metaxalone), but the Veteran stated that he did not use it. He reported undergoing physical therapy twice weekly since 2007. The Veteran also denied being formally diagnosed with fibromyalgia, but believed that he has fibromyalgia symptoms.

The June 2014 examiner opined that there is no objective evidence or pathology which would support a diagnosis of fibromyalgia. In support of the opinion, the examiner reasoned that the Veteran's symptoms were consistent with multiple
specific musculoskeletal complaints (i.e., lumbar degenerative disc disease,
cervical spine degenerative disc disease status-post cervical fusion, bilateral knee
patellofemoral syndrome, and bilateral foot degenerative joint disease) rather than fibromyalgia.

The first requirement for any service connection claim is the existence of a current disability. Brammer, 3 Vet. App. at 225. In this regard, post-service records fail to reveal any diagnosis for the Veteran's allegations of fibromyalgia. Therefore, absent evidence of current disability, service connection cannot be granted. Id. 

The Board has considered the Veteran's statements regarding fibromyalgia as being among his current disabilities. However, the Board finds the conclusions of the June 2014 VA examiner, which are based on clinical evaluation and supported by rationale, to be more probative than references made by the Veteran. No medical examiner has made a formal diagnosis of fibromyalgia. The June 2014 examiner found no objective evidence or pathology pertaining to fibromyalgia. Hence, a basis for compensation is not established. 

Because there is no evidence of a current medically unexplained chronic multisymptom illness, the weight of the evidence is against the claim; and the doctrine of reasonable doubt is not applicable. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

As for service connection on a direct basis, the report of the June 2014 examination weighs against a finding as to the existence of any current fibromyalgia or any current disability manifested by chest pain; weighs against a finding that the Veteran's memory problems are a distinct disability, and separate from his service-connected PTSD; and weighs against a finding that the Veteran's fatigue is a distinct disability, and separate from his service-connected sleep apnea. The Board finds the June 2014 opinions are factually accurate, fully articulated, and contain sound reasoning. Therefore, the opinions are afforded significant probative value. 
Likewise, as noted above, the June 2014 examiner attributed the Veteran's pain and numbness of both hands and fingers to a known clinical diagnosis; and opined that the "residual bilateral cervical radiculopathy" was related to the Veteran's service-connected cervical spine disability. Secondary service connection, appropriate in this manner, has been referred above to the RO for consideration in the first instance.

For the reasons and bases set forth above, the Board concludes that the preponderance of the evidence is against granting service connection for chronic sinusitis and for a qualifying chronic disability under 38 C.F.R. § 3.317. On these 
matters, the benefit-of-the-doubt rule does not apply, and each of the claims must be denied. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Service connection for a disability of the sinuses is denied.

Service connection for a disability manifested by memory problems is denied.

Service connection for a disability manifested by chest pain is denied.

Service connection for a disability manifested by pain and numbness of both hands and fingers is denied.

Service connection for a disability manifested by fatigue is denied.

Service connection for fibromyalgia is denied.



______________________________________________
BETHANY L. BUCK 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs